IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TOMMY CARVER,                )
                             )
            Plaintiff,       )
                             )
    v.                       )    1:17CV986
                             )
JOESPH VALLIERE, *et al.*,   )
                             )
            Defendants.      )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Defendants Joseph Valliere, Catherine Brown, Mike Williams, Susan Glover, Kimberly Click, and Deana Loflin's (hereinafter collectively "Movant Defendants") motion for summary judgment. (Docket Entry 40.) Plaintiff Tommy Carver has filed a response. (Docket Entry 47.) For the reasons stated herein, the Court will recommend that Movant Defendants' motion for summary judgement be granted.

**I. BACKGROUND**

**A. The Parties**

Plaintiff is a *pro se* prisoner of the State of North Carolina. (Amended Complaint ¶¶ III-IV, Docket Entry 24.) While Plaintiff has been incarcerated in Harnett Correctional Institute since December 2017, the facts here arise from a prior period of incarceration in Piedmont Correctional Institute (hereinafter "Piedmont"), a facility of the North Carolina Department of Public Safety (hereinafter "NCDPS"). (Am. Compl. ¶ IV.)

Defendant Valliere is the Correctional Facility Administrator of Piedmont. (Affidavit of Joseph Valliere ¶¶ 3-4, Docket Entry 41-1.) Defendant Brown is currently an Assistant

Superintendent IV at Piedmont, and during all relevant times served in that capacity or as a Correctional Captain. (Affidavit od Catherine Brown ¶¶ 3-4, Docket Entry 41-2.) Defendant Williams is an Assistant Superintendent of Programs II at Piedmont. (Affidavit of Mike Williams ¶¶ 3-4, Docket Entry 41-3.) Defendant Glover is a Nurse Clinician I at Piedmont. (Affidavit of Susan Glover ¶¶ 3-4, Docket Entry 41-4.) Defendant Click began working at Piedmont in March 2014 as a contract nurse, but later was hired full-time and became a Lead Nurse. (Affidavit of Kimberly Click ¶¶ 3-4, Docket Entry 41-5.) Defendant Loflin is a Nurse Supervisor at Piedmont. (Affidavit of Donna Loflin ¶¶ 3-4, Docket Entry 41-6.)

**B. Facts**

The following facts arise from the parties' affidavits and exhibits.

Plaintiff suffers from a number of ailments, including bilateral knee arthritis, lumbar degenerative disk disease, cirrhosis, and chronic obstructive pulmonary disease. (Affidavit of Tommy Carver ¶ 3, Docket Entry 48.) He has received several surgeries, including cervical fusion and rotator cuff repair. (*Id.*) He suffers from chronic severe pain in his back, shoulders, and feet. (*Id.*)

The issue at the core of Plaintiff's claims is whether Movant Defendants improperly withheld or failed to renew methadone prescriptions that he had used to treat his chronic pain.[1] Beginning in 2010, Plaintiff was prescribed and received methadone to treat his pain.

---

[1] Plaintiff's response brief and affidavit allege additional wrongdoing by some or all of Movant Defendants, including retaliation, overriding medical orders, and failing to provide Plaintiff adequate shoes for his foot pain. (*See, e.g.,* Docket Entry 47 at 5; Carver Aff. ¶¶ 13, 17.) However, these claims are not alleged in the amended complaint or grievances with sufficient specificity (*see* Am. Compl. ¶ IV; Ex. Grievance 3500-2016-3BB-03359, Docket Entry 41-7; Ex. Grievance 3500-2017-3BB-00239, Docket Entry 41-8; Ex. Grievance 3500-2017-4DB-05261, Docket Entry 41-9.)

(Carver Aff. ¶ 13.) However, on September 26, 2014, NCDPS issued a policy, effective October 6, 2014, requiring all provision of methadone to outpatients to be approved by the Utilization Review Board (hereinafter "URB"). (Ex. September 26, 2014 Urgent Memo at 1, Docket Entry 41-13.) Plaintiff appears to have continued to receive methadone after the commencement of that policy, though the URB twice failed in 2017 to approve requests for renewal from one of Plaintiff's providers. (*See* Ex. January 23, 2017 UR Review at 2, Docket Entry 41-28; Ex. February 13, 2017 UR Review at 2, Docket Entry 41-32.) Plaintiff thereafter was weaned off of methadone and received other pain medication that he states was not effective. (Ex. March 24, 2017 UR Review at 2, Docket Entry 41-33; Carter Aff. ¶¶ 29-30.)

Plaintiff commenced the instant action on October 27, 2017 by filing a complaint. (Docket Entry 2.) Plaintiff filed an amended complaint on January 16, 2019 against Movant Defendants as well as several others who have not received service of process. (*See* Am. Compl. ¶ I(B); Docket Entries 32, 33.) On May 30, 2019, Movant Defendants filed the instant motion for summary judgment (Docket Entry 40) as well as an accompanying memorandum (Docket Entry 41). Plaintiff filed a response on September 11, 2019. (Docket Entry 47.) Movant Defendants did not file a reply. The matter is now ripe for disposition.

---

"[A] plaintiff may not amend his complaint through arguments in his brief in opposition to summary judgment." *Rutherford v. Cannon*, No. CIV.A. 8:09-2137, 2010 WL 3905386, at *6 (D.S.C. Sept. 2, 2010) (Hendricks, M.J.), *recommendation adopted*, No. 8:09-2137-HMH-BHH, 2010 WL 3834448 (D.S.C. Sept. 27, 2010). Furthermore, several of these claims attribute healthcare treatment decisions to Defendants Valliere, Brown, and Williams, though the record demonstrates that they did not personally provide medical treatment to inmates. (*See* Valliere Aff. ¶¶ 9-10; Brown Aff. ¶¶ 9-10; Williams Aff. ¶¶ 9-10.) Therefore, these additional claims fail.

## II. DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Anderson*, 477 U.S. at 248-49; *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

### A. Mootness

The Court first considers whether Plaintiff's claims seeking declaratory relief are moot. While the parties do not raise the issue, "[m]ootness is a jurisdictional question and may be raised *sua sponte* by a federal court at any stage of proceedings." *United States v. Spring*, 715 F.3d 535, 540 (4th Cir. 2013) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for the purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam). "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *see also Incumaa v. Ozmint*, 507 F.3d 281, 286-287 (4th Cir. 2007). Here, Plaintiff is no longer incarcerated in Piedmont. (Am. Comp. ¶ IV.) Therefore, any claims seeking declaratory or injunctive relief are moot and should be dismissed.

### B. Sovereign Immunity

The Court next considers Movant Defendants' argument that any claims seeking monetary damages that are brought against them in their official capacities are barred by the Eleventh Amendment and sovereign immunity. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). It follows that just as "the Eleventh Amendment bars a damages action against a state in federal court," it also bars suits against state officials in their official capacity. *Kentucky*

*v. Graham,* 473 U.S. 159, 169 (1985). Here, all Movant Defendants are North Carolina state officials. Therefore, all claims seeking monetary damages against Movant Defendants are barred and should be dismissed.

## C. Individual-Capacity Claims

The Court finally considers the claims Plaintiff's claims seeking damages against Movant Defendants in their individual capacities.

### A. Eighth Amendment

Plaintiff's Eighth Amendment claims against Movant Defendants should be dismissed.[2] "The Eighth Amendment, which prohibits infliction of 'cruel and unusual punishments,' applies to claims by prisoners against corrections officials challenging conditions of confinement." *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019) (citations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("The [Eighth] Amendment also imposes duties on [correctional] officials, who must provide humane conditions of confinement . . .."). Eighth Amendment condition-of-confinement claims are evaluated by a two-part test that has both an objective and subjective component. *Id.* "First, the deprivation alleged must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834 (internal citations and quotation marks omitted). To be "sufficiently serious," "a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Second, "a prison official must have a sufficiently

---

[2] Movant Defendants argue that they are entitled to qualified immunity. The Court does not find qualified immunity applicable here, as Plaintiff has alleged facts that make out a violation of a constitutional right that is clearly established at the time of violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). However, as the Court discusses herein, Plaintiff's claim still fails because the facts demonstrate that the alleged violations were not committed by the Movant Defendants.

6

culpable state of mind." *Id.* (internal quotation marks omitted) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In this context, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302-303). "A claim of deliberate indifference . . . implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice." *White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ." *Farmer,* 511 U.S. at 837.

Here, the record demonstrates that Movant Defendants were not responsible for creating or remedying the sufficiently serious deprivations alleged by Plaintiff. None of the Movant Defendants had the authority to renew the authorization of the methadone prescription, as that responsibility was entirely entrusted to the URB.[3] To the extent that Plaintiff argues that the URB's failure to approve methadone prescriptions was due to deficiencies in the requests for approval sent by Defendants Glover, Click, or Loflin (*see* Carver Aff. ¶ 34), this is insufficient to establish deliberate indifference. Plaintiff's remaining Eighth Amendment claims should accordingly be dismissed.

---

[3] Plaintiff states in his affidavit that his psychologist informed him that Defendants Valliere and Brown "gave the order discontinue" his methadone prescriptions. (Carver Aff. ¶ 38.) Medical documents in the record indicate that the discontinuation was due to the failure of the URB to approve the new prescription methadone. (*See* Ex. January 23, 2017 UR Review at 2, Docket Entry 41-28.) This is not a genuine dispute of material fact because nothing indicates that Defendants Valliere and Brown were not acting in accordance to NCDPS policy that all outpatient methadone prescriptions be approved by the URB. (*See* September 26, 2014 Urgent Memo at 1, Docket Entry 41-13.)

7

B. <u>Intentional Infliction of Emotional Distress</u>

Plaintiff's state law claims for intentional infliction of emotional distress remain. While it may exercise supplemental jurisdiction over this claim, the Court can decline to exercise such discretion if it has dismissed all claims that arise under the Court's original jurisdiction. *See* 28 U.S.C. §§ 1367(a), 1367(c)(3). "Certainly, if [all] federal claims are dismissed before trial . . ., the state claims should be dismissed as well." *United Mine Workers of Ame. v. Gibbs*, 383 U.S. 715, 726 (1966). Because the undersigned has recommended the dismissal of all federal claims at this pre-trial stage, the Court should decline to exercise supplemental jurisdiction and accordingly dismiss the claim for intentional infliction of emotional distress without prejudice.

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Movant Defendants' Motion for Summary Judgment (Docket Entry 40) be **GRANTED** with respect to (1) all claims seeking declaratory or injunctive relief, (2) all claims seeking monetary damages against Movant Defendants in their official capacity, and (3) as all claims brought under the Eighth Amendment.

**IT IS FURTHER RECOMMENDED** that all claims seeking monetary damages against Movant Defendants in their individual capacities for intentional infliction of emotional distress be dismissed without prejudice to Plaintiff's pursuit of those claims in state court.

_____
Joe L. Webster
United States Magistrate Judge

December 4, 2019
Durham, North Carolina